UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY, LLC | ) | |
|    Plaintiffs | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | |
| MAURICE PARR | ) | |
|    Defendant | ) | CASE NO.:  4:07CV0008AS |
| | ) | |
| MAURICE PARR | ) | |
|    Counter-Plaintiff | ) | |
| | ) | |
|    VERSUS | ) | |
| | ) | |
| MONSANTO COMPANY and | ) | |
|    Counter-Defendant | ) | |

**MEMORANDUM OPINION AND ORDER**
**FOR PERMANENT INJUNCTION**

This matter came for hearing on April 21, 2008 on the application of the Monsanto plaintiffs for a preliminary injunction against the defendant under the authority of Rule 65(a) of the Federal Rules of Civil Procedure and 35 U.S.C. §283. Pursuant to Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law in support of its judgment.

1

**Findings of Fact**

1.

Monsanto developed and holds patents on the Roundup Ready® transgenic trait embodied in crop seed, which imparts herbicide resistance to the crops grown from the seed.  One of the patents applicable to the Roundup Ready® technology is U.S. Patent No. 5,352, 605 (the '605 patent), which is owned by Monsanto Technology, L.L.C. and which is exclusively licensed to Monsanto Company.  (Both Monsanto plaintiffs will hereafter be referred to collectively as "Monsanto").

2.

Growers who wish to purchase and plant seed containing the patented trait are required to sign a Monsanto Technology/Stewardship Agreement, a limited-use license that restricts the use of the seed to planting a single commercial crop in one growing season.  Under the express terms of the license, growers are not permitted to save the seed grown from the crop or otherwise to use saved Roundup Ready® seed for re-planting in subsequent seasons.  This licensing restriction has been in place since 1996, when Roundup Ready® soybeans were first sold to farmers in the United States.

3.

All soybeans labeled as "Roundup Ready®" contain the biotechnology disclosed in the '605 patent.  By definition, Roundup® Ready soybeans contain a man-made gene comprised of the elements listed in Claims 1, 2, 4, and 5 of the '605 patent.

4.

The defendant, Maurice Parr, operates a mobile seed and grain cleaning business, Custom Seed and Grain Cleaning, with operations in and around Lafayette, Indiana.

5.

Seed cleaning is a process where a harvested crop is run through a mechanical cleaner that sifts trash such as stems, leaves, dirt, and broken/split seed from the whole seed. The primary reason – if not only commercial reason - for cleaning soybean seed is to have it prepared for replanting: by removing this trash from the harvested crop, it is conditioned for planting so that it does not impair the planting equipment and ensures that viable seed is placed into the ground.

6.

Parr schedules appointments with his customers before cleaning crops such as soybeans and wheat. Parr travels with his mobile seed cleaner to his customers' farms and cleans their seed on site.

7.

Parr provides his customers with an invoice for his services which include the following disclaimer:

> As of the date this ticket was printed, the U.S. Congress, through federal seed laws, has expressly protected the rights of farmers to save grain that they have produced for use to seed land that they own, lease or rent. Some seed/chemical companies attempt to circumvent those rights by requiring farmers to sign agreements giving up those rights in order to purchase certain brands/types of seed.
> Custom seed cleaning is not a party to such agreements and will, in no way, hold itself responsible for compliance or enforcement of said agreements.

8.

In 2002, Monsanto sent a letter by certified mail to Parr explaining that it was the owner of the '605 patent and that Roundup Ready crop seed was covered by the '605 patent. This letter also explained that a limited-use license was required to use the crop

3

seed and that saving a crop grown from the licensed seed for planting or selling for replanting was an infringement. The letter stated that Monsanto had information that Parr's seed cleaning business facilitated seed replanting, and further that Parr encouraged and induced growers to clean and replant soybeans which he knew contained Monsanto's patented technology. Finally, the notice requested that Parr cease any actions that induced infringement of the '605 patent and specifically asked Parr to stop:

- cleaning any seed containing Monsanto's patented Roundup Ready biotechnology; and
- advising growers (either orally or in writing) that they are entitled to save and replant seed containing Monsanto's patented Roundup Ready biotechnology.

9.

In response, Parr communicated with Monsanto by letter, expressly stating that he would give all of his customers a copy of the Monsanto notice, and ask them to sign a statement confirming that they are not asking Parr to clean a commodity containing the Roundup Ready technology.

10.

Subsequent to this exchange between the parties, a number of soybean growers used the defendant's seed cleaning services to clean and condition their Roundup Ready® seed for replanting. Monsanto negotiated settlements for the infringement of the '605 patent with eleven farmers that used Parr's seed cleaning services to prepare their saved Roundup Ready soybeans for planting.

11.

Gary Williams, one of Parr's seed cleaning customers, was advised by Parr that it was permissible to save Roundup Ready soybeans and replant them on this farm. Prior to

4

119154-1

2004, Williams used the defendant's seed cleaning services on non-Roundup Ready soybeans. At some point in 2003 or 2004, Williams testified that he asked the defendant about cleaning Roundup Ready soybeans, and was informed by the defendant that it was permissible for a farmer to save Roundup Ready soybeans for his own use. After this discussion, Williams felt that it would be safe to save, clean and replant Roundup Ready soybeans. Williams saved some of his 2005 Roundup Ready soybean crop, had it cleaned by the defendant, and planted that saved seed in the 2006 growing season.

12.

Fred and Jim Inskeep testified that they were convinced by Parr that it was permissible to save Roundup Ready soybeans and replant them on their farm.

> Parr informed the Inskeeps that it was legal for a farmer to save, clean, and replant Roundup Ready soybeans;
> Parr explained to the Inskeeps that the Supreme Court's opinion in *Asgrow Seed Co. v .Winterboer* indicated that it was permissible for a farmer to save, clean and replant Roundup Ready soybeans. Parr gave the Inskeeps a copy of the *Winterboer* opinion;
> After their discussion with Parr, the Inskeeps were convinced that they could legally save, clean and replant Roundup Ready soybeans.
> Subsequently, the Inskeeps saved some of their 2005 Roundup Ready soybean crop, had it cleaned by Parr and planted that saved seed in the 2006 growing season.

13.

The likelihood that any particular soybean crop that Parr cleans contains the Roundup Ready trait is substantial. From 2002 through 2007, approximately **87.3% to 94.3%** of the soybeans planted in Indiana contain Monsanto's Roundup Ready trait.

119154-1

## II. Conclusions of Law.

### A. Inducing Patent Infringement.

Inducing infringement is in violation of the law. The patent statutes state that "Whoever actively induces infringement of a patent shall be liable as an infringer."[1] While active inducement is defined and distinguished in statute, it has its underpinnings in the common law; Section 271(b) of the patent code reflects the codification of common law precedent developed over more than 130 years.[2]

Monsanto alleges that Parr has induced farmers to collectively save, clean and replant Roundup Ready® soybeans in direct infringement of Monsanto's patent rights. Courts applying section 271 (b) have developed the following elements for inducement:

> a direct infringement;
> the active aiding and abetting of the direct infringement by another; and
> the inducer must know or should know that his actions would induce infringement.[3]

These elements provide the framework for imposing vicarious liability for culpable conduct. Accordingly, an inducer is liable to the same extent as the direct infringer.[4]

### 1. Direct Infringement.

Determining whether an infringement has occurred is a two step process.[5] "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device

---

[1] 35 U.S.C. § 271(b).
[2] *Hewlett Packard Co. v. Bausch and Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990).
[3] *DSU Medical Corp. v. LMS Co. Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).
[4] *See* Giles S. Rich, *Infringement Under Section 271 of the Patent Act of 1952*, 21 GEO. WASH. L. REV. 521, 537 (1953).
[5] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

accused of infringing."[6] Claim construction is exclusively a matter of law, determined by the Court upon consideration of the claims themselves, the specification, and the prosecution history.[7] The second step referred to as infringement analysis, is a question of fact.[8] Literal infringement occurs where each of the limitations in the patent claims asserted are contained in the accused device.[9] A patent is infringed if a single claim is infringed.[10]

In this proceeding Monsanto has relied upon only one patent related to the Roundup Ready® trait, the '605 patent.[11] The claims of the '605 patent have been construed numerous times by other district courts, as well as the Federal Circuit, in cases involving the replanting of saved Roundup Ready soybeans. These cases have concluded that Claims 1, 2, 4 and 5 of the '605 patent cover saved Roundup Ready soybeans.[12] Thus, there is ample case law holding that replanting saved Roundup Ready® crops is a direct infringement of the '605 patent.

The factual record presented by Monsanto established that customers of the defendant saved their Roundup Ready® soybeans, the defendant thereafter cleaned the saved seed, and the customers then replanted the seed in the next crop year. These customers

---

[6] *Markman*, 52 F.3d at 976.
[7] *Id*. at 979.
[8] *Stryker Corp. v. Davol, Incorporated*, 234 F.3d 1252, 1258 (Fed. Cir. 2000).
[9] *Hormone Research Foundation, Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334.
[10] *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1055 (Fed. Cir. 1989); *CollegeNet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1236 (Fed. Cir. 2005).
[11] Monsanto has also alleged the infringement of the '247 patent which claims different genetic aspects of the Roundup Ready trait. Because the '605 patent has so often been construed and upheld, for the sake of simplicity in this proceeding only the '605 patent is asserted, and Monsanto will prove infringement of the '247 patent at the trial on the merits.
[12] *See e.g., Monsanto Co. v. Scruggs*, 459 F.3d 1328 (Fed. Cir. 2006)(Roundup Ready® soybean seeds covered by the '605 patent and infringed); *Monsanto Co. v. David*, 448 F.Supp.2d 1088 (E.D. Mo. 2006)(All Roundup Ready® soybeans contain the chimeric gene described in claims 1 and 2 of the '605 patent); *Monsanto Co. v. Good*, 2004 WL 1664013 (D.N.J. 2004)(construing claims 1, 2, 4 and 5 of the '605 patent to cover Roundup Ready® soybeans); *Monsanto Co. v. Trantham*, 156 F.Supp.2d 855 (W.D.Tenn. 2001)(Roundup Ready® soybeans covered by the '605 patent and infringed).

119154-1

subsequently admitted to planting saved Roundup Ready soybeans and entered into settlements with Monsanto to resolve the claims of direct infringement against them.

Even without this evidence, the direct infringement by Parr's customers may be inferred in this case. The fact that Parr both advised his customers that they could save Roundup® Ready soybeans, and cleaned that seed in preparation for planting, is sufficient to establish that the farmers actually planted the saved seed. Instructions that teach an infringing use of a patented device may be used to establish that end-users followed the instructions and commit direct infringement.[13]

This defeats any argument that because Parr is not directly involved in the act of replanting the saved seed itself, he has not induced a direct infringement. In this particular case, Parr claims that neither the sole act of saving seed, nor the sole act of cleaning seed, is an infringement. These acts cannot be viewed in isolation in the context of Parr's seed cleaning business, and the representations that he made to his customers. In furtherance of his business of cleaning, Parr represents that farmers have a federally-protected right to replant their saved, cleaned seed. No other purpose is contemplated, other than replanting. Moreover, Parr is on notice limited-use licenses expressly prohibit farmers from saving the licensed seed for replanting. The cleaning of saved seed is fundamental step in the process of replanting. Yet, Parr also declares to his customers that he "is not a party to such (limited-use license) agreements," and that he can be relied upon not to enforce said agreement. Thus, Parr's involvement is at the center of the direct infringement by the grower.

    **2.**    <u>**Active Aiding and Abetting.**</u>

---

[13] *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).

The second element of inducement requires some affirmative act on the part of the inducer. The mere failure to take steps to prevent an affiliate from infringing a patent is not considered to be inducement.[14]

Parr advertises his services and schedules the cleaning appointments with his customers. The seed cleaning equipment is pulled behind Parr's pickup truck as he travels from farm to farm, cleaning customers' saved seed. More importantly, Parr convinces farmers to save, clean, and replant Roundup Ready® soybeans.

The purpose of cleaning the seed is to condition it for planting a new crop. The seed cleaner removes stems, leaves, gravel, dirt, and broken/split seed so that it does not impair the planting equipment and ensures that viable seed is placed into the ground. Accordingly, by advising farmers to save Roundup Ready® seed, and by cleaning saved Roundup Ready® soybeans, Parr actively aids and abets the direct infringement of farmers who subsequently plant that seed.

### 3. Intent.

The third element of inducement is the scienter requirement – a party must know or should know that their actions his will induce actual infringements. Direct evidence is not required to establish the intent element of inducement – circumstantial evidence is sufficient.[15] Actual knowledge of the patent that is being infringed is to be considered for the element of intent for the inducement cause of action.[16] There is no dispute that Parr had actual knowledge of Monsanto's patents in Roundup Ready® crop seed. This knowledge is direct evidence of the intent to induce.

---

[14] *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378 (Fed. Cir. 2001).
[15] *Water Technologies Corp.*, 850 F.2d 660, 668.
[16] *DSU Medical Corp.*, 471 F.3d 1293, 1304.

The testimony of three of Parr's customers is probative evidence of Parr's intent to efforts and intention to induce farmers to save Roundup Ready soybeans.  Three soybean farmers all were advised by Parr that it was legal to clean and plant saved Roundup Ready® seed.  Indeed, after their discussions with Parr, each of the farmers became convinced that they would not be in violation of any laws if they saved, cleaned, and planted Roundup Ready® soybeans.

There is further evidence of Parr's intent to induce.  In response to a letter from Monsanto's outside counsel informing him of the '605 patent, Parr indicated that he would require his customers "to sign a statement that [he] was not being asked to process a commodity containing the Roundup Ready® technology."  After asking a few of his customers to sign such a statement, Parr discontinued the practice.  Yet, Parr continued to encourage growers to save and clean Roundup Ready® soybeans to replant.

Parr also used two documents in his efforts to persuade farmers to save Roundup Ready soybeans: (1) the *Asgrow Seed Co. v. Winterboer* court opinion, and (2) the "seed saving notice" on the invoices of Custom Seed Cleaning.  First, Parr gave his customers copies of the *Winterboer* opinion and used it convince them into believing that the case provided proof that farmers could save Roundup Ready® soybeans for replanting.  The precise issue in *Winterboer* addressed the extent to which a farmer could make "brown bag" sales of crop seed protected by the Plant Variety Protection Act (PVPA) under a provision in the Act allowing farmers to save such seed.[17]  However, that case did not address seed containing patented traits.  Parr misinformed his customers with this document to advise growers that they could save and clean Roundup Ready® soybeans for replanting. As the Supreme Court recently stated, "The classic instance of inducement

---

[17] 513 U.S. 179, 181-183 (construing 7 U.S.C. § 2543).

is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." [8][1]

Second, Parr placed a "seed saving notice" on the reverse side of Custom Seed Cleaning invoices referencing an amorphous federal right-to-save-seed. This notice, by itself, shows Parr's awareness that many of his customers saved seed for replanting. The notice went on to indicate that while some seed companies restricted this seed-saving right, Custom Seed Cleaning would not be responsible for the enforcement of such restrictions. Apparently, Parr also sought to shield himself from liability for his own advice.

Certainly after receiving the April 2, 2002 written notice of the '605 patent from Monsanto's outside counsel, Parr could not have any credible belief that the collective activities of saving, cleaning, and replanting Roundup Ready® soybeans was not a direct infringement. Thereafter, Parr did not comply with his commitment to Monsanto, made in writing on April 5, 2002, to take specific affirmative steps to insure against further infringement. Instead, Parr chose to continue to induce the very infringement against which he was cautioned.

The very nature of this case compels injunctive relief. Without injunctive relief, Monsanto would be in the position of having to repeatedly investigate and file lawsuits seeking damages against Parr and his customers *after* discovering a new crop of saved Roundup Ready soybeans. The quantities of black market seed can be substantial - a single soybean seed grows into a plant that will conservatively produce 36 soybeans.

---

[18] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 938 (2005).

11

119154-1

Thus, even a small quantity of saved seed can result in a very large, illicit supply over the course of one season. Thus, Monsanto has met this requirement for injunctive relief.

The assertion that Monsanto can be monetarily compensated by simply filing infringement suits against farmers who have used Parr's services misses the point of the inducement cause of action. If Parr were correct, any action under section 271(b) would be pointless. Moreover, Parr has stated in his answers to written discovery that he is unable to identify his customers because he does not keep records, and does not remember who they are.

The time, effort, and resources necessary to protect patent rights in the Roundup Ready® technology are significant. In particular, Roundup Ready® soybeans are planted on millions of acres over a large swath of the United States. And while the large majority of farmers using this technology abide by their license, Monsanto is obliged to investigate and stop the activities of the infringers in every location it occurs. At the same time, it is easy for a farmer to infringe Monsanto's patents in the Roundup Ready® trait. No special knowledge or training is necessary - a farmer need only to save, clean, and replant a Roundup Ready® soybean crop and the misappropriation is complete.

The public interest favors the entry of an injunction so as to stop the proliferation of an illegal supply of Roundup Ready® soybeans. Parr enables infringing farmers to utilize Monsanto's patented technology without authorization, thereby securing unfair competitive advantage over the thousands of other growers who have obtained a valid license from Monsanto, paid the technology fee, and complied with the terms of the license. Those growers who are properly licensed, and who have paid for the advantages of Roundup Ready® crop seed, also have an interest in seeing to it that a black market

for infringing crop seed is not allowed to exist and thrive to their significant detriment. "It is not in the public's best interest to have patented technology pirated in that such would discourage future investment in innovative technology." [19]

Parr also misleads his customers by advocating a position that it is legal to save, clean and replant Roundup Ready soybeans. Certainly, it is in the public interest to prevent farmers from being confused and misled into believing that saving, cleaning and replanting Roundup Ready soybeans is not an infringement.

Parr's activities constitute an inducement to infringe, and by cleaning saved seed he facilitated infringement by growers who then replanted the cleaned seed.

### III.  ORDER.

IT IS HEREBY ORDERED that a permanent injunction issue pursuant to 35 U.S.C. § 283 and Rule 65 enjoining the following activities of Maurice Parr d/b/a Custom Seed and Grain Cleaning:

1)  Cleaning or conditioning crop seed that contains the Roundup® Ready trait;

2)  Parr will make no statements or distribute information suggesting that it is legal or otherwise permissible to save, clean, and replant Roundup Ready® soybeans, or acquire Roundup Ready soybeans from an unauthorized source;

3)  Mr. Parr will inform his customers that it is illegal to save, clean, and replant Roundup Ready soybeans, and that doing so constitutes

---

[19] *Scruggs*, 249 F.Supp.2d 746, 760-761.

13
119154-1

infringement by placing a notice on his seed cleaning equipment stating the following:

> Do Not Ask to Clean Roundup Ready Soybeans.
>
> All Brands of Roundup Ready Soybeans Are Patented.
>
> Replanting Is Prohibited.

4) Mr. Parr will require his customers to certify in writing that the soybeans that they are cleaning do not contain the Roundup Ready® trait. Parr will provide Monsanto with the written certifications, along with a sample of the seed cleaned, within thirty (30) days of each load of seed cleaned. If any sample tested is positive for the Roundup Ready® trait, provided that Parr has relied upon the grower's written certification in good faith, then Monsanto will not seek to enforce this injunction against Parr in that instance.

5) Judgment is rendered in favor of Monsanto for the sum of $40,000 in compensation for past infringement. Monsanto agrees that it will not collect its Judgment for $40,000 so long as Parr honors the terms of this Order. In the event Parr violates any terms of this Order, then Monsanto shall proceed with the collection of this $40,000 judgment, and seek any other damages and relief to which it may be entitled.

Signed ___April 21, 2008___ in South Bend, Indiana.

                                      /s/ ALLEN SHARP            .
                    United Stated District Court Judge Allen Sharp